BLOOD HURST & O'REARDON, LLP

1     BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
2     LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
3     PAULA M. ROACH (254142)
600 B Street, Suite 1550
4     San Diego, CA  92101
Telephone: 619/338-1100
5     619/338-1101 (fax)
tblood@bholaw.com
6     lhurst@bholaw.com
toreardon@bholaw.com
7     proach@bholaw.com

8     MILBERG LLP
JANINE L. POLLACK
9     JOSHUA E. KELLER
One Pennsylvania Plaza, 48th Floor
10    New York, N.Y. 10119
Telephone: 212/594-5300
11    212/868-1229 (fax)
jpollack@milberg.com
12    jkeller@milberg.com

13    Attorneys for Plaintiff

14    [Additional counsel appear on signature page.]

15

16                 UNITED STATES DISTRICT COURT

17              SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18   TAMARA GRABOWSKI, On Behalf of Herself, All Others Similarly Situated and<br>19   the General Public, | Case No.:   3:10-cv-01300-JM(WVG) |
| | CLASS ACTION |
| 20           Plaintiff, | FIRST AMENDED CLASS ACTION COMPLAINT FOR: |
| 21           v. | 1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; |
| 22   SKECHERS U.S.A., INC., | |
| 23           Defendant. | 2.   VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and |
| 24 | 3.   BREACH OF EXPRESS WARRANTY |
| 25 | DEMAND FOR JURY TRIAL |
| 26 | |
| 27 | |
| 28 | |

1    Plaintiff Tamara Grabowski ("plaintiff") brings this action on behalf of herself and all

2    others similarly situated against defendant SKECHERS U.S.A., Inc. ("SKECHERS" or

3    "defendant"), and states:

### JURISDICTION AND VENUE

5    1.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).   The

6    matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

7    and is a class action in which some of the members of the class of plaintiffs are citizens of

8    states different from SKECHERS.   Further, greater than two-thirds of the class members

9    reside in states other than the state in which SKECHERS is a citizen.

10    2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the

11    acts and transactions giving rise to this action occurred in this district and because defendant:

12    (a)    is authorized to conduct business in this district and has intentionally

13    availed itself of the laws and markets within this district through the promotion, marketing,

14    distribution and sale of its products in this district;

15    (b)    does substantial business in this district; and

16    (c)    is subject to personal jurisdiction in this district.

### NATURE OF ACTION

18    3.    SKECHERS manufactures, markets and sells a type of men's and women's

19    footwear known as SKECHERS Shape-ups®.   Through an extensive and comprehensive

20    nationwide marketing campaign, SKECHERS claims the expensive Shape-ups® (starting at

21    $100 per pair) will provide to anyone who wears them a variety of health benefits ordinary

22    footwear cannot provide.   SKECHERS promises that its shoes improve posture, promote

23    weight loss, strengthen the back, improve blood circulation, promote sleep, reduce mental

24    stress, reduce physical stress on knees, legs and ankle joints, and burn calories.   SKECHERS

25    represents that clinical studies show that Shape-ups® are proven to provide these major health

26    benefits.   However, SKECHERS Shape-ups® are not proven to provide any of these benefits.

27    To the contrary, Shape-ups® may cause or exacerbate the very type of problems SKECHERS

28

BLOOD HURST & O'REARDON, LLP

00025245

1

1    claims its footwear provides.   SKECHERS' representations are false, misleading, and

2    reasonably likely to deceive the public.

3        4.    SKECHERS' nationwide advertising campaign has been extensive and

4    comprehensive, spending millions of dollars to convey these deceptive messages to

5    consumers throughout the United States.  SKECHERS conveyed and continues to convey its

6    deceptive claims about Shape-ups® through a variety of media, including point of sale

7    displays, television, newspapers, magazines, direct mail, the Internet and on the product's

8    packaging.  The only reason a consumer would buy Shape-Ups® is to obtain the advertised

9    benefits.

10       5.    SKECHERS' advertising and marketing campaign is designed to cause

11   consumers to buy Shape-ups® as a result of the deceptive health benefits message, and

12   SKECHERS has succeeded.  As a result of this campaign, the Shape-ups® launch has

13   elevated the footwear brand to the top seller in its product category, and generated record

14   sales exceeding $100 million.

15       6.    As a result of the misleading messages conveyed through its campaign,

16   SKECHERS has sold footwear that does not perform as advertised, and can cause harm to

17   people who wear them.  Further, SKECHERS has been able to charge a significant price

18   premium for Shape-ups® over other footwear products, including other SKECHERS

19   footwear products.

20       7.    Plaintiff brings this action on behalf of herself and other similarly situated

21   consumers who purchase Shape-ups® in the United States in order to halt the dissemination

22   of this false and misleading advertising message, correct the false and misleading perception

23   SKECHERS has created in the minds of consumers, and obtain redress for those who have

24   purchased Shape-ups®.  Plaintiff alleges violations of the Consumers Legal Remedies Act,

25   the Unfair Competition Law, and breach of express warranty created by SKECHERS'

26   marketing, including its advertising and packaging.

27

28

BLOOD HURST & O'REARDON, LLP

00025245

1

**PARTIES**

2  8.  At all times relevant to this matter, plaintiff Tamara Grabowski resided and

3 continues to reside in this district.  During the class period, plaintiff was exposed to and saw

4 SKECHERS' advertising claims, purchased Shape-ups® in reliance on these claims, and

5 suffered injury in fact and lost money as a result of the unfair competition described herein.

6  9.  SKECHERS, is incorporated in the State of Delaware and is headquartered in

7 Manhattan Beach, California.  SKECHERS is registered to do business in the State of

8 California, and does business in the State of California.  SKECHERS' corporate headquarters

9 and additional administrative offices are located at five premises in Manhattan Beach,

10 California.   From its Manhattan Beach headquarters and Ontario, California distribution

11 centers, SKECHERS created the false and deceptive advertising campaign at issue, and

12 promotes, markets, distributes, and sells Shape-ups® to hundreds of thousands of consumers

13 throughout the United States.  As stated in its most recent Form 10-K filing, the majority of

14 SKECHERS advertising is conceptualized using its in-house design team, and senior

15 management is directly involved in shaping the image and conception, development and

16 implementation of its advertising and marketing activities.  Along with wholesale distribution,

17 SKECHERS sells the Shape-ups® footwear on its e-commerce website and in its own retail

18 stores.

19

**FACTUAL ALLEGATIONS**

20  10.  The Shape-ups® footwear manufactured, advertised, marketed and sold by

21 SKECHERS have a sole that curves outward from the bottom of the foot, so the bottom of the

22 shoe is a convex, semi-circular shape.  It is known in the industry as a "rocker bottom" shoe.

23 Shape-ups® footwear is the leader in this new category of footwear.  The rocker bottom shoe

24 category enjoyed retail sales of about $145 million in 2009, up from just $17 million in 2008,

25 and is expected to materially increase over the next several years.  In fact, in just the first four

26 months of 2010, sales of rocker bottom shoes skyrocketed to $252 million.  The following is

27 an example of one of SKECHERS Shape-ups® shoes:

28

BLOOD HURST & O'REARDON, LLP

00025245

3



11.     SKECHERS represents that Shape-ups® work as follows: "Designed to improve your life by changing the way you walk, Shape-ups feature a unique soft kinetic wedge insert and dynamic rolling bottom to simulate walking on soft sand.  With the comfort of Shape-ups, you will feel your heel sink to the ground as you step, roll forward as your weight shifts to its center, and push off with your toes.  This movement will result in stronger leg, buttock, back and abdominal muscles as you stabilize your steps."

12.     In June 2009, SKECHERS launched its Shape-ups® line of footwear in the United States.  On Shape-ups'® packaging and in its other advertisements, SKECHERS stated and continues to state that Shape-ups® provide major health benefits, including reducing knee and joint stress, toning muscles, promoting weight-loss, improving posture, improving blood circulation, tightening abdominal muscles, strengthening and firming back muscles, firming leg muscles and firming calf muscles.  SKECHERS promises to provide the benefits of exercising without the need to exercise, or exercise as much.

13.     Throughout the relevant time period, SKECHERS has marketed Shape-ups® using similar and deceptive advertising and packaging.  Likewise, the marketing for men's and women's Shape-ups® contains substantially the same message.  The following is an example of a typical men's Shape-ups® print advertisement:

BLOOD HURST & O'REARDON, LLP



14.    Below is an example of a typical women's Shape-ups® print advertisement:



00025245

15.     Another print advertisement promises:

**CHANGE YOUR LIFE BY WALKING IN Shape-ups.**

**Shape Ups® are designed to enhance the benefits of walking by stimulating muscles not utilized with standard walking shoes.**  They also reduce the impact on joints by providing a more neutral, forgiving walking surface. Walking on a soft surface may seem awkward at first, but your body will compensate by activating muscles in your legs, buttocks, back and stomach to center your body, resulting in improved coordination and posture, stronger muscles, and increased blood flow.

Shape Ups will have a positive impact on you physically.  Regular use of Shape Ups help you sleep better and can play an important role in combating stress. **It's as easy as walking in Shape Ups.**

16.     The Shape-ups® print advertisements each contain substantially similar messages about the ability of Shape-ups® to provide health benefits.  Attached as Exhibit A is a collection of some of the advertisements containing the uniform false and deceptive statements.

17.     SKECHERS also repeats the Shape-ups® misrepresentations on its websites: www.SKECHERS.com, www.soholab.com, and www.myshapeups.com.  These websites are available to the general public and SKECHERS' advertisements in other media promote these websites.

18.     For example, on the front page of its SKECHERS.com website, SKECHERS makes the following claims:



BLOOD HURST & O'REARDON, LLP

00025245

19.     According to SKECHERS, there are "**3 REASONS WHY YOU <u>NEED</u> Shape-ups**":

**1.     Stronger You**

Shape-ups are designed to help you strengthen your muscles, including your back, abdomen, and calves.

**2.     Healthier You**

Shape-ups will help you lose weight and improve your circulation, creating a healthier you!

**3.     Easy Exercise Routine**

It's easy to shape up with Shape-ups.  Wear your Shape-ups everywhere and anywhere you walk (or stand), and your body will feel the benefits.

20.     SKECHERS print and website advertisements reinforce the health benefits message by using purported doctor endorsement and customer testimonials:

"After performing a six-week clinical trial testing the benefits of SKECHERS Shape-ups, I am confident in recommending them to patients to increase their low back endurance and improve gluteal strength.  Patients also benefitted from weight loss and improved body composition."

- Dr. Steve Gautrea, California

"These Shape-ups help me get a good walking workout without killing my knees or shins.  They have amazing cushioning and the rolling motion minimizes the impact on my joints."

- Sarah, London

"Shape-ups really help my back feel better – and after walking in the shoes daily, my muscles feel much stronger."

- Frank, Arizona

21.     SKECHERS Shape-ups® television commercials convey the same message by SKECHERS in other media.  A typical Shape-ups® television commercial claims:

- [Announcer voice]: "Get in shape without setting foot in a gym with Shape-ups® from SKECHERS."

- [Testimonial from Lisa - Ohio]: "I already feel a difference in the way my jeans fit."

- [Testimonial from Nina – Texas]: "My feet, legs and back don't hurt anymore."

BLOOD HURST & O'REARDON, LLP

- [Voice of Pro Football Hall of Fame quarterback Joe Montana]: "I'm Joe Montana, and I spent 16 years playing pro football, and Shape-ups® have improved my strength and posture."

- [Announcer voice]: "Get in shape. Shape-ups® from SKECHERS."

22.     Another typical commercial, featuring Hall of Fame Quarterback Joe Montana, claims:

> "I've been an athlete all my life. When I came out of football I couldn't do a whole lot. I'd had knee surgeries, back surgeries…I've heard all these promises from all kinds of shoe companies about the new cushioning system that's gonna change this, change that. All of the sudden I came across the Shape-ups® and my knees were feeling better after long walks, my back wasn't hurting quite as much, all of the sudden my posture was changing and I started feeling a lot better and, you know, thinking some crazy things all of the sudden. You're all hearing my comeback. What we would like to do is hear about your comeback. Go to myshapeups.com and share your story with us."

23.     To further reinforce the appearance that its claims are legitimate and different from ordinary footwear, each pair of Shape-ups® comes with an "instructional booklet" and "instructional DVD."

24.     SKECHERS also claims that the Shape-ups® major health benefits have been shown in clinical studies. For example, at its skechers.com and soholab.com websites, SKECHERS states: "Four clinical studies in the US and Japan show that Shape-ups increase muscle activity and energy consumption over standard fitness shoes!" However, none of these studies constitutes reliable scientific or clinical proof. These studies were funded by SKECHERS, and none of them has been published in peer-reviewed journals. SKECHERS does not make the full studies publically available.

25.     Even SKECHERS' own purported clinical proof demonstrates the falsity of its claims. Contrary to SKECHERS' advertising claims, one of the four purported clinical studies concluded that the participants wearing Shape-ups® did not experience statistically significant differences in terms of weight loss or body composition. *See* S. Gautreau, Skechers Shape Ups Clinical Case Study, http://www.fitnessfootwear.com/t-Skechers-Shape-Ups-Clinical-Case-Study.aspx (last visited June 17, 2010).

BLOOD HURST & O'REARDON, LLP

00025245

8

26.     SKECHERS also states that "Doctors and researchers have confirmed that walking in Shape-ups can have major benefits on our health, including:

- More toned and strengthened leg, back, buttock and abdominal muscles

- Reduced body fat

- Improved circulation, aerobic condition and exercise tolerance

- Improved posture, relieving muscle tension and back/joint problems."

27.     However, clinical evidence that has been subjected to scientific peer-review – unlike the four purported clinical studies listed on SKECHERS' websites – suggests that not only are SKECHERS' claims regarding Shape-ups® false and deceptive, but that wearing Shape-ups® as directed could result in harm to the wearer.  For example, in one published study conducted to determine the effectiveness of unstable shoe construction (rocker bottomed shoes) on reducing pain and increasing balance in persons with knee osteoarthritis found that there was no significant difference between the test group that wore an unstable shoe construction and the control group in either pain reduction or increased balance. *"Unstable Shoe Construction and Reduction of Pain in Osteoarthritis Patients,"* Nigg, Benno, *et al.*, Medicine & Science in Sports & Exercise (2006).

28.     As to SKECHERS' claim that wearing Shape-ups® reduces joint stress, another published study testing unstable shoe construction on joints did not find evidence to support the hypothesis that unstable shoe construction reduced joint loading; rather there was no significant difference in the nine joint impulses measured between the group that wore unstable shoes and the control group that wore a regular running shoe.  *"Effect of unstable Shoe Construction on Lower Extremity Gait Characteristics*."  Nigg, Benno, *et al*., Clinical Biomechanics (2005).

29.     In July 2010, the American Council on Exercise ("ACE") released the results of two studies conducted by exercise scientists from the University of Wisconsin, La Crosse,

BLOOD HURST & O'REARDON, LLP

00025245

9

comparing regular athletic shoes to rocker-bottom toning shoes, including Shape-ups®.[1] According to the ACE Report:

> [N]one of the toning shoes showed statistically significant increases in either exercise response or muscle activation during any of the treadmill trials.  There is simply no evidence to support the claims that these shoes will help wearers exercise more intensely, burn more calories or improve muscle strength.

30.    Making additional misrepresentations, SKECHERS publicly denounced the ACE Report as having "no scientific validity," "being virtually worthless," and reassuring consumers that "numerous studies" support Shape-ups'® advertised health benefits.[2]

31.    Based upon the purported major health benefits conveyed in its marketing and advertising, SKECHERS is able to price Shape-ups® at a premium to other similar footwear. In fact, the average retail price of Shape-ups® is almost double the price of other SKECHERS' shoes.  Through the uniform deceptive and misleading marketing campaign, SKECHERS leads consumers to believe that the proven health benefits justify the price differential.

32.    Shortly after the class action complaint was filed in this action, SKECHERS issued several press releases that continued to make misrepresentations concerning the purported health benefits of Shape-ups®, and Shape-ups®' purported scientific substantiation. For example, in an August 10, 2010, press release a SKECHERS spokesman stated, "The body of scientific research shows that rocker bottom shoes increase muscle activity and heighten the metabolic demands of walking…The research has also shown that wearers of Shape-ups – when compared to wearers of conventional flat bottom shoes – show increased weight loss, greater reductions in body fat, and other improvements in fitness and health markers." *Id.*  These statements are not substantiated, and are likely to further deceive consumers.

---

[1]    The "ACE Report" is available at http://www.acefitness.org/getfit/studies/toningshoes072010.pdf (last visited December 15, 2010).

[2]    *See* SKECHERS USA, Inc., *Skechers says recently filed civil complaints against Shape-ups product line are frivolous and a thinly veiled attempt to extort money from the Company*, BUSINESS WIRE (Aug. 10, 2010), available at http://skx.com/press.jsp (last visited December 15, 2010).

BLOOD HURST & O'REARDON, LLP

33.    Shape-ups® have resulted in record sales revenues for SKECHERS. According to SKECHERS' Chief Operating Officer during an investor conference call on February 17, 2010, "I know the [Shape-ups®] category for us is bigger than we anticipated." In October 2009 analysts predicted that SKECHERS was selling an average of 35,000 pairs of Shape-ups® per week.

34.    During the first quarter of 2010, SKECHERS' quarterly sales surged 44 percent, with record quarterly sales and earnings totaling $492 million and $56 million, respectively. According to an industry survey conducted on May 16, 2010, six of the top ten athletic shoes were so-called toning products – with four of the ten shoes being Shape-ups®. In 2009, an industry analyst predicted that Shape-ups® held an 80 percent market share of the $145 million rocker-bottom shoe market.

## CLASS DEFINITION AND ALLEGATIONS

35.    Plaintiff brings this action on behalf of herself and members of a Class defined as:

> All persons who purchased SKECHERS Shape-ups® branded footwear in the United States. Excluded from the Class are defendant and its officers, directors and employees, those who purchased SKECHERS Shape-ups® branded footwear for the purpose of resale, and those persons pursuing claims for personal injuries.

36.    *Numerosity*. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds of thousands of members. The precise number of Class members is unknown to plaintiff. The true number of Class members is known by the defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

37.    *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

BLOOD HURST & O'REARDON, LLP

00025245

11

      (a)    whether SKECHERS had adequate substantiation for its claims prior to making them;

      (b)    whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

      (c)    whether SKECHERS' alleged conduct violates public policy;

      (d)    whether the alleged conduct constitutes violations of the laws asserted;

      (e)    whether SKECHERS engaged in false or misleading advertising;

      (f)    whether plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

      (g)    whether plaintiff and Class members are entitled to an award of punitive damages; and

      (h)    whether plaintiff and Class members are entitled to declaratory and injunctive relief.

38.    ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class in that the defendant was unjustly enriched as a result of plaintiff's and the Class' respective purchases of Shape-ups®.

39.    ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

40.    ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.

BLOOD HURST & O'REARDON, LLP

00025245

1    Individualized litigation would also increase the delay and expense to all parties and the court

2    system from the issues raised by this action.  By contrast, the class action device provides the

3    benefits of adjudication of these issues in a single proceeding, economies of scale, and

4    comprehensive supervision by a single court, and presents no unusual management

5    difficulties under the circumstances here.

6         41.     Unless a Class is certified, defendant will retain monies received as a result of

7    its conduct that was taken from plaintiff and Class members.  Unless a Class-wide injunction

8    is issued, defendant will continue to commit the violations alleged, and the members of the

9    Class and the general public will continue to be misled.

10                                         **COUNT I**

11                **Violation of Business & Professions Code §17200, *et seq.***

12        42.     Plaintiff repeats and realleges the allegations contained in the paragraphs

13   above, as if fully set forth herein.

14        43.     Plaintiff brings this claim individually and on behalf of the Class.

15        44.     As alleged herein, plaintiff has suffered injury in fact and lost money or

16   property as a result of defendant's conduct because she purchased SKECHERS Shape-ups®

17   branded footwear.

18        45.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.*

19   ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any

20   false or misleading advertising.  In the course of conducting business, defendant committed

21   unlawful business practices by, *inter alia*, making the representations (which also constitutes

22   advertising within the meaning of §17200) and omissions of material facts, as set forth more

23   fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770, Business &

24   Professions Code §§17200, *et seq.*, 17500, *et seq.*, California Health & Safety Code §110390,

25   *et seq.*, 21 U.S.C. §301, *et seq.*, and the common law.

26        46.     Plaintiff and the Class reserve the right to allege other violations of law which

27   constitute other unlawful business acts or practices.  Such conduct is ongoing and continues

28   to this date.

BLOOD HURST & O'REARDON, LLP

00025245

13

1    47.    Defendant's actions also constitute "unfair" business acts or practices because,

2    as alleged above, *inter alia*, defendant engages in false advertising, misrepresents and omits

3    material facts regarding its Shape-ups®, and thereby offends an established public policy, and

4    engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially

5    injurious to consumers.

6    48.    As stated in this Complaint, plaintiff alleges violations of consumer protection,

7    unfair competition and truth in advertising laws, resulting in harm to consumers.  Defendant's

8    acts and omissions also violate and offend the public policy against engaging in false and

9    misleading advertising, unfair competition and deceptive conduct towards consumers.  This

10   conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et*

11   *seq.*

12   49.    There were reasonably available alternatives to further SKECHERS'

13   legitimate business interests, other than the conduct described herein.

14   50.    Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent

15   business act or practice."

16   51.    SKECHERS' actions, claims, nondisclosures, and misleading statements, as

17   alleged in this Complaint, were false, misleading and likely to deceive the consuming public

18   within the meaning of Business & Professions Code §17200, *et seq.*

19   52.    Plaintiff and other members of the Class have in fact been deceived as a result

20   of their reliance on defendant's representations and omissions.  This reliance has caused harm

21   to plaintiff and other members of the Class.  Plaintiff and other Class members have suffered

22   injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

23   53.    As a result of its deception, defendant has been able to reap unjust revenue and

24   profit.

25   54.    Unless restrained and enjoined, defendant will continue to engage in the

26   above-described conduct.  Accordingly, injunctive relief is appropriate.

27   55.    Plaintiff, on behalf of herself, all others similarly situated, and the general

28   public, seeks restitution and disgorgement of all money obtained from plaintiff and the

BLOOD HURST & O'REARDON, LLP

00025245

14

1   members of the Class collected as a result of unfair competition, an injunction prohibiting

2   defendant from continuing such practices, corrective advertising and all other relief this Court

3   deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**

**Violations of the Consumers Legal Remedies Act –
Civil Code §1750 *et seq.***

56.     Plaintiff repeats and realleges the allegations contained in the paragraphs
above, as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the Class.

58.     This cause of action is brought pursuant to the Consumers Legal Remedies
Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiff is a consumer as defined by
California Civil Code §1761(d).  SKECHERS Shape-ups® footwear are goods within the
meaning of the Act.

59.     SKECHERS violated and continues to violate the Act by engaging in the
following practices proscribed by California Civil Code §1770(a) in transactions with
plaintiff and the Class which were intended to result in, and did result in, the sale of the
Shape-ups®:

    (5)     Representing that [Shape-ups® have] . . . approval, characteristics, . . . uses [or]
        benefits . . . which they do not have . . . .

            *        *        *

    (7)     Representing that [Shape-ups® are] of a particular standard, quality or
        grade . . . if they are of another.

            *        *        *

    (9)     Advertising goods . . . with intent not to sell them as advertised.

            *        *        *

    (16)    Representing that [Shape-ups® have] been supplied in accordance with a
        previous representation when [they have] not.

1    60.    SKECHERS violated the Act by representing through its advertisements the

2    Shape-ups® as described above when it knew, or should have known, that the representations

3    and advertisements were unsubstantiated, false and misleading.

4    61.    Pursuant to California Civil Code §1782(d), plaintiff and the Class seek a

5    Court order enjoining the above-described wrongful acts and practices of defendant and for

6    restitution and disgorgement.

7    62.    Pursuant to §1782 of the Act, by letter dated June 17, 2010, plaintiff notified

8    defendant in writing by certified mail of the particular violations of §1770 of the Act and

9    demanded that defendant rectify the problems associated with the actions detailed above and

10   give notice to all affected consumers of its intent to so act.  A copy of the letter dated June 17,

11   2010, is attached as Exhibit B.

12   63.    Defendant has failed to rectify or agree to rectify the problems associated with

13   the actions detailed above and give notice to all affected consumers within 30 days of the date

14   of written notice pursuant to §1782 of the Act.  Therefore, plaintiff further seeks claims for

15   actual, punitive and statutory damages, as appropriate.

16   64.    Defendant's conduct is malicious, fraudulent and wanton.

17                                **COUNT III**

18                          **Breach of Express Warranty**

19   65.    Plaintiff repeats and realleges the allegations contained in the paragraphs

20   above, as if fully set forth herein.

21   66.    Plaintiff brings this claim individually and on behalf of the Class.

22   67.    Plaintiff, and each member of the Class, formed a contract with defendant at

23   the time plaintiff and the other members of the Class purchased the Shape-ups® footwear.

24   The terms of that contract include the promises and affirmations of fact made by SKECHERS

25   on its Shape-ups® packaging and through its marketing campaign, as described above.  This

26   product packaging and advertising constitutes express warranties, became part of the basis of

27   the bargain, and is part of a standardized contract between plaintiff and the members of the

28   Class on the one hand, and SKECHERS on the other.

BLOOD HURST & O'REARDON, LLP

00025245

16

1       68.    All conditions precedent to SKECHERS' liability under this contract have

2      been performed by plaintiff and the Class.

3       69.    SKECHERS breached the terms of this contract, including the express

4      warranties, with plaintiff and the Class by not providing the Shape-ups® footwear which

5      could provide the benefits described above.

6       70.    As a result of SKECHERS' breach of its contract, plaintiff and the Class have

7      been damaged in the amount of the purchase price of the Shape-ups® footwear they

8      purchased.

9                          **PRAYER FOR RELIEF**

10      Wherefore, plaintiff prays for a judgment:

11      A.    Certifying the Class as requested herein, and appointing plaintiff as Class

12      Representative, and plaintiff's counsel as Class Counsel;

13      B.    Awarding plaintiff and the proposed Class members damages;

14      C.    Awarding restitution and disgorgement of SKECHERS' revenues to plaintiff

15      and the proposed Class members;

16      D.    Awarding declaratory and injunctive relief as permitted by law or equity,

17      including: enjoining defendant from continuing the unlawful practices as set forth herein, and

18      directing defendant to identify, with Court supervision, victims of its conduct and pay them

19      restitution and disgorgement of all monies acquired by defendant by means of any act or

20      practice declared by this Court to be wrongful;

21      E.    Ordering SKECHERS to engage in a corrective advertising campaign;

22      F.    Awarding attorneys' fees and costs; and

23      G.    Providing such further relief as may be just and proper.

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 18, 2011

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)


By:      s/Timothy G. Blood
         TIMOTHY G. BLOOD

600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

MILBERG LLP
JANINE L. POLLACK
JOSHUA E. KELLER
One Pennsylvania Plaza, 48th Floor
New York, N.Y. 10119
Telephone: 212/594-5300
212/868-1229 (fax)
jpollack@milberg.com
jkeller@milberg.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
TODD D. CARPENTER (CA 234464)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone:  619/756-7095
602/798-5860 (fax)
tcarpenter@bffb.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
  (CA 203111; AZ 020191)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012-3311
Telephone:  602/274-1100
602/798-5860 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

BLOOD HURST & O'REARDON, LLP

00025245

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILBERG LLP
JEFF S. WESTERMAN (CA 94559)
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: 213/617-1200
213/617-1975 (fax)
jwesterman@milberg.com

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
JAMES C. SHAH (CA 260435)
35 E. State Street
Media, PA 19063
Telephone: 610/891-9880
610/891-9883 (fax)
jshah@sfmslaw.com

EDGAR LAW FIRM, LLC
JOHN F. EDGAR
ANTHONY E. LACROIX
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: 816/531-0033
816/531-3322 (fax)
jfe@edgarlawfirm.com
tel@edgarlawfirm.com

Attorneys for Plaintiff

BLOOD HURST & O'REARDON, LLP

00025245

19

CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 18, 2011.

s/Timothy G. Blood
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP

00025245